UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-12-B-W |
| | ) | |
| MICHAEL FRAPPIER, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING ORDER**

Having pleaded guilty to being a felon in possession of two firearms in violation of 18 U.S.C. § 922(g)(1), Michael Frappier was facing a Guideline range of incarceration of 46 to 57 months. This range resulted primarily because Mr. Frappier's possession of one firearm began on December 22, 1996, and the Guidelines required reaching back to 1986, capturing convictions in the late 1980s and early 1990s. A further Guideline analysis reveals the proper application of the Guidelines would mandate the imposition of sentence between 41 and 51 months. However, in the narrow circumstances of this case, this Court concludes a statutory sentence of twenty months more accurately reflects congressional sentencing policy consistent with 18 U.S.C. § 3553.

**I.   STATEMENT OF FACTS**

On January 3, 2005, Rosemarie Frappier reached her limit with her husband's recreational use of marijuana and called the police. The Penobscot County Sheriff's Office responded and with her consent, searched the Frappier home in Etna, Maine. In the closet in the master bedroom, they came upon a bag of marijuana and marijuana stalks.[1] They also

---

[1] Mr. Frappier's possession of marijuana did not result in any charges, presumably due to the small amount. Under Maine state law, the possession of a usable amount of marijuana is a civil infraction. 22 M.R.S.A. § 2383(1). The federal government could have prosecuted Mr. Frappier for misdemeanor possession, 21 U.S.C. § 844(a), but elected not to do so.

discovered ammunition and two firearms: a New England Firearms .410 gauge shotgun, Pardner Model, and a New Haven Mossberg .22 magnum caliber bolt action rifle, Model 740T. As a convicted felon, Michael Frappier's possession of firearms was a violation of federal law, 18 U.S.C. § 922(g)(1). The next day a Complaint was issued against him and on March 2, 2005, Mr. Frappier pleaded guilty to a one count Information, charging a violation of § 922(g)(1).

## II.  DISCUSSION

### A.  The Guideline Sentence

#### 1.  Calculations Based On a January 3, 2005 Date of Offense

The Guideline penalty for a violation of 18 U.S.C. § 922(g)(1) is contained in U.S.S.G. § 2K2.1. This section provides an escalating range of penalties, depending in part upon the Defendant's criminal history. Although the prohibition against a felon possessing a firearm has no time limit, the applicable provisions of U.S.S.G. § 2K2.1, which escalate the penalties, count only those offenses committed within ten years of the "commencement of the instant offense."[2] If the date of the offense in this case were January 3, 2005, the date the police discovered the firearms, Mr. Frappier would have had no countable prior felonies and his offense level would have been fixed at 14. With acceptance of responsibility, the offense level would drop to 12. With a criminal history of I and a total offense level of 12, Mr. Frappier's Guideline range of sentence would have been 10 to 16 months.

#### 2.  Commencement of the Offense

---

[2] Comment 12 to U.S.S.G. § 2K2.1 states:
> For purposes of applying subsection (a)(1), (2), (3), or (4)(A), use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c). In addition, for purposes of applying subsection (a)(1) and (a)(2), use only those felony convictions that are counted separately under § 4A1.1(a), (b), or (c).

U.S.S.G. § 4A1.1(a) is not applicable, since Mr. Frappier did not receive a prior sentence of imprisonment exceeding one year and one month. The applicable provisions are § 4A1.1(b) and (c) and each contains a ten year limitation on countable felonies for sentences "imposed more than ten years prior to the defendant's commencement of the instant offense." U.S.S.G. § 4A1.1, Commentary 2, 3.

Mr. Frappier's offense, however, did not commence on January 3, 2005. He first came into possession of the .22 rifle in 2003, when a friend, Martin Flood, allowed Mr. Frappier's son, Anthony, then 12 years old, to borrow the .22 for target practice. Mr. Frappier kept the .22 for Anthony, who was living full time with his mother.

The shotgun is another story. He came into possession of the .410 shotgun on December 22, 1996, when he purchased it at Wal-Mart. When he did so, Mr. Frappier lied on the ATF Form 4473, denying he had ever been convicted of a felony. Mr. Frappier bought the shotgun for his older son, Daniel, then 10 years old, who was also living with his mother, but as with the .22, Mr. Frappier retained possession of Daniel's shotgun.

The question is when Mr. Frappier's violation of 18 U.S.C. § 922(g)(1) commenced under U.S.S.G. § 4A1.1, Application Notes 2, 3 ("A sentence imposed more than ten years prior to the defendant's <u>commencement of the instant offense</u> is not counted.") (emphasis supplied). Application Note 8 of U.S.S.G. § 4A1.2 explains that "commencement of the instant offense" includes any relevant conduct. *See also* U.S.S.G. § 1B1.3 (Relevant Conduct). Section 1B1.3(a)(1) requires the court to include as relevant conduct "all acts and omissions committed…by defendant…that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A).

There are two 2005 unpublished Sixth Circuit cases directly on point: *United States v. Oliver,* No. 04-1309, 2005 WL 894584 (6th Cir. 2005) and *United States v. Susewitt,* No. 03-6572, 2005 WL 611893 (6th Cir. 2005). In *Oliver,* the Sixth Circuit affirmed the district court's determination that the date the defendant commenced a felon in possession offense was the date he obtained the firearms, and in *Susewitt,* it affirmed a conclusion that the date the defendant

3

commenced a possession of a sawed-off shotgun offense was the date he sawed off the barrel.  In each case, the earlier date led the sentencing court to capture earlier convictions that would otherwise have been beyond the allowable time.  The conclusions in *Oliver* and *Susewitt* are consistent with other case law.  *See United States v. Kennedy,* 32 F.3d 876, 890-91 (4th Cir. 1994) (drug offense commenced at the starting point of the conspiracy, not the date alleged in the indictment), *cert. denied sub. nom. Ingram v. United States,* 513 U.S. 1128 (1995); *United States v. Rosenkrans,* 236 F.3d 976, 977-78 (8th Cir. 2001) (relevant conduct for methamphetamine dealer began when defendant began selling).

Applying § 1B1.3's definition of relevant conduct to § 4A1.1's concept of commencement, this Court concludes the date for commencement of the offense involving the .22 took place in 2003, when Mr. Frappier came into possession of the rifle, and the date for commencement of the offense involving the .410 shotgun took place on December 22, 1996, when he made the illegal purchase.  This conclusion is buttressed by the uncontroverted evidence that once in possession, Mr. Frappier continuously retained possession of both firearms until the date of discovery.

### 3. Recalculation of the Guideline Range

The conclusion that Mr. Frappier commenced his possession of the .22 in 2003 works no untoward consequences for him; however, the conclusion that he commenced his possession of the .410 shotgun on December 22, 1996 results in a significant change in his Guideline range of sentence.  Mr. Frappier's criminal history consists of the following:  1) a June 30, 1989 conviction for a February 6, 1989 Criminal Threatening with a Dangerous Weapon; 2) a 1990 conviction for a 1990 Operating Under the Influence; and, 3) September 4, 1991 convictions for May 26, 1991 offenses of Eluding an Officer and Operating After Suspension.  Capturing these

three prior convictions affects both Mr. Frappier's criminal history classification and his § 2K2.1 offense level.  Mr. Frappier's criminal history classification increases to III and his total offense level rises to 24.  With a three level reduction for acceptance of responsibility, his total offense level is 21.  A Criminal History Category III and a total offense level 21, the sentencing range jumps to 46 to 57 months.

### 4. Criminal History Category:  U.S.S.G. § 4A1.3

Under U.S.S.G. § 4A1.3, the sentencing court may alter a defendant's criminal history category if it concludes "that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes."  U.S.S.G. § 4A1.3(b)(1).  Considering the nature of these three prior offenses, this Court cannot conclude a Criminal History Category III over-represents the seriousness of his prior crimes.  Criminal Threatening with a Dangerous Weapon, Eluding an Officer, and Operating Under the Influence are manifestly serious offenses; two are crimes of violence.

On the other hand, Defendant makes a more telling point when he argues that his criminal history over-represents his likelihood of recidivism.  Section 4A1.3 departures are "encouraged" under *Koon v. United States,* 518 U.S. 81 (1996); *United States v. Wilkerson,* 183 F. Supp. 2d 373, 380 (D. Mass. 2002).  A criminal history departure is distinct from a departure under § 5K2.0, which requires the existence of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission."  *United States v. Woodley,* 344 F. Supp. 2d 274, 277 n.4; *Wilkerson,* 183 F. Supp. 2d at 380.  This Court does not have to find there is "something atypical or unusual about the defendant's record."  *Woodley,* 344 F. Supp. 2d at 277.

Considerations include the nature of the offenses that resulted in prior convictions, *United States v. Footman,* 66 F. Supp. 2d 83, 99 (D. Mass. 1999), *aff'd,* 215 F.3d 145 (1st Cir. 2000), and the "defendant's record in the context of his life and background." *Wilkerson,* 183 F. Supp. 2d at 380.  Relevant factors are the defendant's age at the time of the prior offenses, whether the crimes were violent or non-violent, how close in time the prior offenses were, and the length of the prior sentences.  *See Woodley,* 344 F. Supp. 2d at 278.

Here, the analysis is something of a mixed bag.  Mr. Frappier's Category III results from a criminal history point score of 4, tipping him into the higher category.  His crimes, as earlier noted, were serious and some were violent.  Criminal Threatening with a Dangerous Weapon is particularly disturbing, since the current charge is possession of firearms.  However, Mr. Frappier is now 43 years old and the three countable convictions took place between February 6, 1989 and May 26, 1991, when he was between 26 and 29 years old.  The relative temporal compression of these offenses indicates more of a crime spree than a defendant engaging in a life of crime.  None of the prior sentences was lengthy:  thirty days for the 1989 conviction, forty-eight hours for the 1990 OUI, and sixty days for the 1991 convictions.  He has one uncounted conviction in 1999 for Operating After Suspension, resulting in a ten day jail sentence. Otherwise, he had no prior or subsequent brushes with the law until January 3, 2005.

Following these convictions he remained employed in the concrete business, and at the sentencing hearing, a number of friends and business acquaintances spoke on his behalf.  His motivation for possessing the two firearms was solely to teach his children how to operate rifles and there is no indication of any improper use.  The police came to know of his violation of law for reasons unrelated to his possession of a firearm.  His post-offense conduct has been exemplary.

To his detriment, he has admitted to using marijuana and failing to keep up with child support payments. However, on balance, in light of the length of time since his prior convictions, his continued employment, his parental motivation in possessing the firearms, and the absence of any interaction with the law for the last five years, the inclusion of these three older convictions, in this Court's view, over-represents the likelihood he will commit further crimes and justifies a lower classification. Given the seriousness of his earlier crimes, his uncounted conviction, his continued marijuana use, and his failure to pay all child support, this Court could not conclude that the risk of recidivism dropped to a Category I, where the person either has no prior record or only one prior conviction. Instead, this Court concluded that a Category II was a more accurate reflection of Mr. Frappier's likelihood of recidivism.

### 5. Recalculation at Category II

The recalculation of the sentencing range for Mr. Frappier at Category II does not result in a marked change in his sentencing range under the Guidelines. With an offense level of 21 and a Criminal History Category II, the Guideline range of sentence is 41 to 51 months.

### B. The Statutory Sentence: 18 U.S.C. § 3553(a)

Relying on *United States v. Booker,* __U.S.__, 125 S.Ct. 738 (2004), Mr. Frappier urges this Court to conclude that the Guideline sentencing range of 41 to 51 months would be manifestly inconsistent with the congressional sentencing directives set forth in 18 U.S.C. § 3553, which requires the sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. § 3553(a). Section 3553(a)(2) states that such purposes include the need:

>   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B)   to afford adequate deterrence to criminal conduct;
>   (C)   to protect the public from further crimes of the defendant; and,

>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) also instructs the sentencing courts to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to be based on the purposes described above; (3) the kinds of sentences available; (4) the sentencing range established by the guidelines; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and, (7) the need to provide restitution to any victims of the offense. Judge Adelman grouped these factors into three categories: the nature of the offense; the history and character of the defendant; and, the needs of the public and any victims of the crime. *United States v. Galvez-Barrios,* 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

### 1. Nature of the Offense

It is beyond argument that Congress considers the possession of a firearm by a convicted felon to be a most serious offense. Statutory penalties are rigorous and the more egregious cases can require the imposition of mandatory minimums and lengthy prison terms, sometimes consecutive to the sentences imposed on underlying crimes. *See generally* 18 U.S.C. § 924. There are, nevertheless, several considerations uniquely applicable to Mr. Frappier's case.

First, his sole motivation in possessing the firearms was to do for his sons what his father had done for him: teach them how to use a rifle. There is no evidence he ever actually used either firearm, except firing the firearms from five to six times while instructing them in the operation and safety of the weapons. His older son, Daniel, is currently applying this knowledge as a member of the United States Army about to be shipped to Iraq.

Second, the uncontradicted evidence of his motivation compels the ancillary conclusion that he did not possess the weapon for any illegal purpose. Apart from his status offense, he never perpetrated a crime with either weapon and even though his wife and he had a difficult, sometimes rancorous relationship, there is no evidence he ever used or threatened to use either firearm against her. There is no evidence he even went hunting with either weapon or ever used either weapon outside the presence of his sons.

Third, the weapons are standard hunting weapons: a .22 rifle and a .410 shotgun. The firearms were not weapons commonly used in the perpetration of crime or traded for drugs. They were rifles, not handguns; they were not high caliber rifles; they were not assault weapons. In short, the type of weapons was consistent with Mr. Frappier's version of his motivation in their possession.

Fourth, Mr. Frappier's possession of the weapons was discovered for reasons other than his use. When Mrs. Frappier complained to the police, she did not complain about his possession of firearms; she instead complained about his use of marijuana. The police found the firearms when they were looking for something else.

Fifth, but for the length of time since his 1996 purchase of the shotgun, Mr. Frappier would have been facing between 10 and 16 months incarceration, instead of 41 to 51 months.

Sixth, rather than support a lengthier sentence, the passage of time from 1996 without incident, substantiates his contention that his possession of the shotgun was benign and deserving of a less stringent, not more stringent sentence.

### 2. History and Character of the Defendant

Mr. Frappier presents a mixed picture. His prior criminal history, his lying on a federal firearms form, his persistent use of marijuana, his failure to pay court-ordered child support, and

his ongoing illegal possession of firearms do not recommend him. Yet, at the sentencing hearing, nine people came forward to speak for him, ranging from friends and family to business associates. They spoke of a person who is hard working, kind, considerate, and responsible. There is evidence that supports their view. Mr. Frappier has worked construction for the last twenty years and in 2004, he began his own concrete business. Although his failure to pay child support is troubling, his son, Anthony, is obviously devoted to him and testified at the sentencing hearing for his father. Other individuals attested to his willingness to help them out without being asked and without expectation of compensation. Finally, Mr. Frappier has done extremely well since his arrest. He has been subjected to random drug testing and has remained drug free while on bail; he has also participated regularly in drug counseling.

### 3. The Needs of the Public and Any Victims

Mr. Frappier's crime has no direct victims. There are, however, public interests. One interest is to deter him from committing further crimes. Although Mr. Frappier's use of marijuana and failure to pay child support evidence a somewhat cavalier attitude toward the law, it is this Court's impression, having had the opportunity to evaluate Mr. Frappier in person, that he is not likely to engage in future criminal conduct. His more serious criminal conduct occurred nearly 15 years ago and, upon arrest in this case, he has been scrupulously compliant with bail conditions.

A more significant issue is whether a sentence outside the Guideline range would violate the need for uniformity in sentencing among similarly situated defendants. Here, the Court has been influenced by the impact the Guideline's definition of the commencement of the offense, reaching back over a long period of comparative quiescence to gather in criminal convictions that would ordinarily be beyond time. In the appropriate case, where the defendant's history

justifies such a long reach, this Court will not hesitate to apply it. However, here, where Mr. Frappier's eight years of intervening possession of the firearm substantiates no improper use, this Court concludes the policies underlying U.S.S.G. § 4A1.1's incorporation of the relevant conduct definition in U.S.S.G. § 1B1.3(b)(1) are outweighed by the statutory directive to tailor the sentence to the individual defendant. Moreover, if not for the application of § 4A1.1, the comparable class of similarly situation defendants would be those receiving between 10 and 16 months incarceration.

### III.  CONCLUSION

This Court concludes the congressional sentencing policies reflected in 18 U.S.C. § 3553(a) are more effectively carried out in this case by imposing a sentence outside the Guideline range of sentence and this Court sentences this Defendant to 20 months incarceration.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated at Bangor, Maine this 8th day of June, 2005